UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN BURKHOLDER, CASE NO.: 6:24-cv-00923-WWB-RMN

Plaintiff,

v.

FREEDOM LIFE INSURANCE COMPANY OF AMERICA, USHEALTH ADVISORS, LLC, MICHAEL ALLOCCO, CLERCY GAINES II, and ANTHONY "SAGE" HOHENKIRK,

Defendants.
______________________________ /

**DEFENDANTS FREEDOM LIFE INSURANCE COMPANY OF AMERICA AND USHEALTH ADVISORS, LLC' S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Freedom Life Insurance Company of America ("Freedom Life") and USHEALTH Advisors, LLC ("USHA"), move this Court to dismiss Plaintiff John Burkholder's Complaint, Dkt. No. 1 (the "Complaint").

**PRELIMINARY STATEMENT**

Plaintiff is an attorney licensed to practice law in Kentucky. *See* Ex. A. Recently, Plaintiff has filed six other lawsuits, like this, under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"), and the Florida Telemarketing Act, Fla. Stat. §

501.601 ("FTA").[1] This lawsuit, filed against Freedom Life and USHA (collectively, the "Corporate Defendants") as well as Michael Allocco, Clercy Gaines II, and Anthony "Sage" Hohenkirk (collectively, the "Individual Defendants"), is due to be dismissed for a number of reasons.

First, under controlling case law, Plaintiff lacks standing to assert Count V, in which he alleges a violation by "Defendant(s)" of 47 C.F.R. § 64.1200(d), because he never plausibly alleges that he requested to be added to any internal do-not-call list. Without that, Article III standing is not possible.

Second, the Complaint is a shotgun pleading. Plaintiff's incorporation of all preceding allegations in each of his counts makes the nature of his claims inscrutable. The Eleventh Circuit mandates dismissal of such complaints.

Third, the Complaint fails to provide any specifics of the allegations by grouping all Defendants together as "Defendant(s)," yet another type of impermissible shotgun pleading. That is a particularly fatal flaw considering the settled body of law that requires plausibly alleging an agency relationship before vicarious liability can be imposed upon a non-caller.

Fourth, each of the causes of action fail to allege facts sufficient to state a plausible, as opposed to conceivable, claim for relief. For example, Plaintiff parrots

[1] See *Burkholder v. Soft Informatics, LLC,* No. 2024-CA-000952-OC (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Smartmatch Insurance Agency, LLC,* No. 2023-CA-004959-OC (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Bottom Line Concepts LLC* (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Allied Capital Services, Inc.*, No. 2023-CA-004470-OC (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Dealstruck Capital LLC,* No. 2023-CA-004413-OC (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Sanchez,* No. 2023-CA-003348-OC (Fla. 9th Jud. Cir. Ct.); *Burkholder v. Messinger,* No. 2023-CA-003336-OC (Fla. 9th Jud. Cir. Ct.).

the language of the FTSA provision prohibiting the use of an "automated system," but states no facts that would render that allegation plausible. Similarly, he conclusorily asserts "Defendant(s)" did not have the procedures required by a regulation issued under the TCPA, but again offers no factual basis for that bald, conclusory claim.

Fifth, Plaintiff asserts two causes of action for injunctive relief, but the courts do not recognize such a cause of action, and certainly not for an injunction to follow the law, which is what Plaintiff seeks.

Sixth, Plaintiff alleges Defendants violated the FTA by not obtaining commercial telephone seller licenses, but he ignores that Defendants, as he himself alleges, are licensed to transact insurance and thus are statutorily exempt from the license requirement. There is no claim as a matter of law here.

Seventh, Plaintiff's claim for intrusion upon seclusion requires intrusion "into one's private quarters" and a level of conduct that is extreme and outrageous. Florida courts have repeatedly held that a large number of telephone calls, far more than the 28 alleged by Plaintiff, do not rise to that level of conduct.

For these and other reasons, the Court should dismiss the Complaint.

## ARGUMENT

## I. PLAINTIFF LACKS STANDING TO ASSERT COUNT V

### A. Applicable Legal Standards

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court

jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). One element of the case-or-controversy requirement is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The elements of Article III standing "'are not mere pleading requirements' but instead comprise 'an indispensable part of the plaintiff's case.'" *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Furthermore, "a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

**B. Plaintiff's Lack of Standing on Count V**

Count V attempts to assert a violation of 47 C.F.R. 64.1200(d), which states in relevant part, "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity . . . ." Such a list is an "internal" or company-specific list, as opposed to the National Do-Not-Call Registry ("NDNCR") created under 47 U.S.C. § 227(c) and which is the subject of regulations appearing at 47 C.F.R. 64.1200(c).

Here, Plaintiff lacks standing to assert his IDNC claim (Count V) because he never alleges that he requested that anyone allegedly associated with the Defendants add his telephone number to an internal do-not-call list or otherwise asked that they stop calling or texting him. At most, Plaintiff alleges he "expressed

disinterest on the first call," but as a matter of law that does not constitute "a request from a residential telephone subscriber not to receive calls from that person or entity . . . ." 47 C.F.R. 64.1200(d)(3). Rather, "the called party must clearly express his or her desire not to receive further calls," such as by "plainly telling Defendants not to contact him on his cell phone . . . or messaging 'STOP' after receiving the first text message." *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1048 (9th Cir. 2017) (internal quotation omitted).[2] Plaintiff makes no such allegation here.

Plaintiff thus fails to allege a concrete injury that is fairly traceable to Defendants, and therefore lacks standing. The Eleventh Circuit already ruled on this exact question in *Cordoba v. DirectTV, LLC*, 942 F.3d 1259 (11th Cir. 2019). The Eleventh Circuit held that while "calls placed in violation of the [TCPA] are injuries in fact," "recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list." *Id.* at 1276. As in *Cordoba,* here there is no plausible causal link between Defendants' alleged failure to maintain

[2] *See also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7997 (2015) ("[T]he TCPA requires . . . that the called party clearly express his or her desire not to receive further calls."); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021) (holding expressions of "disinterest in" any solicited products or services "f[a]ll short of 'clearly expressing' [one']s desire not to receive additional calls"); *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, *5 (S.D. Fla. Mar. 31, 2017) (holding response of "no, uh, thanks a lot by goodbye" and termination of call "did not amount to a directive for Defendants to do anything, much less stop calling [plaintiff]").

IDNC procedures (the alleged violation) and any purported telephone call to Plaintiff because he never alleges he requested that they stop calling him:

> if the "unrestricted telemarketing" argument depends on [Plaintiff's] injury in fact of receiving unwanted phone calls, it fails for the reason we've already discussed: the receipt of a call is not traceable to [Defendants'] failure to comply with the internal do-not-call list regulations if the recipient wouldn't have been on the list in the first place even if it had been maintained. In short, the allegation that the [Plaintiff was] injured while [Defendants] engaged in an "unrestricted telemarketing" campaign does not add anything to the argument – *Lujan* requires that the plaintiffs allege a concrete and particularized injury in fact that is fairly traceable to the defendant's wrongful conduct.

*Cordoba*, 942 F.3d at 1272.

The recent decision in *Grieben v. Fashion Nova, Inc.*, No. 22-CV-60908, 2022 WL 4598649 (S.D. Fla. Sept. 29, 2022), involved the same situation. In *Grieben*, plaintiffs' sole TCPA claim alleged violation of the procedures and standards set forth in 47 C.F.R. § 64.1200(d). *See id.* at *3. The court held that because "the Complaint does not allege that Plaintiffs asked to be placed on Defendant's EDNC [entity-specific, internal do-not-call] List, the failure to comply with the regulatory requirements related to EDNC Lists did not cause Plaintiffs' alleged injuries," and dismissed the TCPA claim. *See id.* at *5-7. For the same reasons, the Court should dismiss Count V.

## II. PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### A. Applicable Legal Standards

A pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of

the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

Finally, though courts "liberally construe pro se pleadings and hold them to less stringent standards than we apply to formal pleadings that lawyers draft," (*Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020)), when, as here, plaintiff "is a licensed lawyer, his complaint ***does not*** receive the liberal construction typically afforded *pro se* plaintiffs' complaints." *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 908 n.1 (11th Cir. 2013) (emphasis added).

### B. The Complaint Is an Impermissible Shotgun Pleading

In pleading its claims and to "give the defendant fair notice of what the claim is . . . and the grounds upon which it rests," (*Twombly*, 550 U.S. at 555), "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "When a plaintiff violates

these basic pleading rules—*e.g.*, by filing a 'shotgun pleading'—problems arise for litigants and judges." *Gergenti v. Ethicon, Inc.*, No. 2:20-CV-428-FTM-38MRM, 2020 WL 7695646, *1 (M.D. Fla. Dec. 28, 2020). Thus, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). "They waste scarce judicial resources, inexorably broaden[ ] the scope of discovery, wreak havoc on appellate court dockets, and undermine[ ] the public's respect for the courts." *Id.* They also fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Of the four types of shotgun pleadings, "[t]he most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. This type of shotgun pleading forces "the trial court [to] sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Here, Plaintiff's Complaint impermissibly incorporates the allegations of each preceding count. *See* Compl. at ¶¶ 23, 29, 35, 39, 45, 51, 52 [erroneously numbered]. That has the effect of obscuring which of the prior counts' allegations apply to the subsequent counts and in what manner they are being asserted against the Corporate Defendants. "A pleading drafted in this manner contravenes Rule

8(a)(2)'s requirement for a short and plain statement of the claim and disregards Fed. R. Civ. P. 10(b)'s requirement that discrete claims should be plead in separate counts," and is due to be dismissed. *Cox v. Bay Area Credit Servs., LLC*, No. 8:15-CV-1111-T-24AEP, 2015 WL 5821785, *2 (M.D. Fla. Oct. 2, 2015). *See also, e.g.*, *Uys v. Harris*, No. 6:20-CV-1143-CEM-EJK, 2021 WL 2458698, *2 (M.D. Fla. May 11, 2021); *Woznicki v. Raydon Corp.*, No. 6:18-CV-2090-ORL-41GJK, 2019 WL 11502880, at *1 (M.D. Fla. Apr. 9, 2019).

### C. The Complaint Improperly Groups Defendants Together

Another category of shotgun pleadings is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. The Complaint runs afoul of this category, too. Plaintiff fails to *plausibly* state who texted or called him allegedly in violation of the TCPA, FTSA, or FTA and how USHA, Freedom Life, or any of the Individual Defendants is allegedly responsible for such conduct. The Complaint makes allegations in haphazard fashion that "Defendants" called him or, at its most specific, that "Defendants Freedom and USHealth made or directed others including but not limited to [the Individual Defendants] to make" the telephone calls at issue. Compl. at ¶ 24. Plaintiff fails to explain how or why two different corporate defendants would or could direct individuals to make the calls at issue.[3] Here,

[3] Confusingly, even though he seems to be included in the allegations that he was directed to make telephone calls at issue, Allocco appears to have been named solely in a supervisory capacity. *See* Compl. at ¶ 8.

"Plaintiff lumps [all five] Defendants together but fails to explain why or how these parties are subject to such treatment." *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No. 6:22-CV-1605-WWB-EJK, 2023 WL 10947151, *2 (M.D. Fla. July 12, 2023) (Berger, J.).

That deficiency is particularly significant here because the Complaint fails to give any of the Defendants notice of the claims and grounds for liability asserted against them – direct liability, vicarious liability, or something else? – and fails to state a claim for relief. "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Group, Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018). Plaintiff never details who directly made any calls nor does he identify, never mind plausibly allege, a principal-agent relationship between any of the Defendants. As noted, the only attempt to parse any specific roles in the alleged misconduct is the conclusory assertion that "Freedom and USHealth made or directed others including but not limited to Messrs. Allocco, Gaines, and Hohenkirk to make" the telephone calls at issue. Compl. at ¶ 24. Otherwise, including in the same count, the allegations are asserted against "Defendants" or the more qualified and far less probative "Defendant(s)." *See* Compl. at ¶¶ 18, 26-27, 30-31, 42-43, 48-49, 52-53, 57-59. That leaves the Corporate Defendants to guess as to the basis of their asserted liability. Are they both accused of placing the calls for which direct liability would apply? Or was one (or both?) limited to being the principal(s)

vicariously liable for telephone calls made by purported agents? And how is Freedom Life's alleged role distinct from USHA's alleged role? Were they involved in separate calls and with the same supposed agents or different ones? None of that is alleged.

Moreover, the law is clear that simply reciting the word "agent" is not enough to plausibly allege a principal-agent relationship, which is distinct from an "insurance agent." *See*, *e.g.*, *Surgery Ctr.* 2023 WL 10947151 at *3 ("[C]onclusory allegations of agency without any supporting facts are not enough to properly allege agency or the existence of an agreement between Cigna and the third parties that contracted with Plaintiff.") (collecting cases); *Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (finding plaintiff failed to plausibly alleged telemarketers allegedly calling on behalf of State Farm were in a principal-agent relationship); *Abante*, 2018 WL 288055 at *5 (similar). Plaintiff does not attempt to allege any well-pleaded facts sufficient to permit a plausible inference of an agency relationship under any of the three common law principles (formal agency, apparent authority, and ratification). *See*, *e.g.*, *Cordoba*, 942 F.3d at 1265; *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014). Plaintiff's claims asserted against all Defendants cannot be permitted by his conclusory and unadorned allegation that (both?) Corporate Defendants "made or directed others" to place the telephone calls at issue can fit just as easily into any of his other complaints, fails to plausibly allege a principal-agent relationship that would allow imposing liability on the

Defendants for the calls at issue, and require dismissal of all asserted claims.

### D. Count I: FTSA Claim

Count I of the Complaint attempts to assert a claim under the FTSA, and more specifically Fla. Stat. § 501.059(8)(a). *See* Compl. at ¶ 26. Section 501.059(8)(a) prohibits, in relevant part, "mak[ing] or knowingly allow[ing] a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party." The Complaint, however, is devoid of any well-pleaded facts plausibly suggesting any such system was used by whomever called Plaintiff in any of the telephone calls placed to him.

Plaintiff never alleges any facts sufficient to plausibly allege that any call was made to him involving "an automated system for the selection or dialing of telephone numbers" as required by the statute. At most, Plaintiff alleges, "[u]pon information and belief, ***some or all*** of the telephonic communications described above ***likely*** involved an automated system for the selection or dialing of telephone numbers or the playing of a record message when connected." Compl. at ¶ 19 (emphases added). Plaintiff repeats this parroting of the statutory elements in Paragraph 26, once again providing only conclusions, and no facts as to why he believes or that would be sufficient to credit his conclusory assertion that such a system was used during the alleged calls (as opposed to any other, non-violative system). *Accord Iqbal*, 556 U.S. at 678. Plaintiff does not even allege he heard a

recorded message on any of the calls, but he copied and pasted that part of the statutory language.

Another court in this District has ruled that effectively the same scant allegation – in that case, "[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers" – was conclusory and insufficient to state a plausible claim for relief. *Davis v. Coast Dental Servs., LLC*, No. 8:22-CV-941-KKM-TGW, 2022 WL 4217141, *2 (M.D. Fla. Sept. 13, 2022). The court explained that the plaintiff "could have pleaded facts such as information on [the defendant's] website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source," but the conclusory allegation akin to Plaintiff's here was equally consistent with the hiring of "a marketing firm to send individual messages from a personal cell phone in full compliance with the FTSA." *Id.* The same is true here. Plaintiff has failed to allege facts sufficient to plausibly suggest the text messages or telephone calls were made to him using an "automated system" for purposes of the FTSA.

**E. Count II: Injunctive Relief under the FTSA**

Count II seeks injunctive relief under the FTSA. "[I]njunctive relief," however, "cannot be pled as an independent claim for relief," and thus "pleading injunctive relief as an independent cause of action" is not proper. *Organo Gold*

*Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019). "[A]n injunction is not a cause of action, but a remedy." *Morris v. Lincare, Inc.*, No. 8:22-CV-2048-CEH-AAS, 2023 WL 5336780, *4 (M.D. Fla. Aug. 18, 2023) (dismissing claim for injunction with prejudice). In the words of the Eleventh Circuit, "[t]here is no such thing as a suit for a traditional injunction in the abstract," and "any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005).

Furthermore, the requested injunction – that "Defendant(s) . . . follow Federal and Florida law," (Compl. at ¶ 32) – is an "impermissible" "injunction demanding that a party do nothing more specific than 'obey the law . . . .'" *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)).[4] Count II should be dismissed.

### F. Count III: FTA Claim

In Count III, Plaintiff alleges that Defendants violated the FTA, more specifically Fla. Stat. § 501.605(1), which requires that "a commercial telephone seller . . . shall obtain a license from the department." *See also* Compl. at ¶¶ 36-37. Plaintiff's claim fails as a matter of law because all Defendants, which Plaintiff concedes are "licensed to transact insurance in Florida," (*id.* at ¶¶ 6-7), are statutorily exempt from the licensing requirement of the FTA.

[4] It is unclear why Plaintiff thinks an injunction issued pursuant to a Florida statute could require compliance with federal law.

Fla. Stat. § 501.604 provides, in relevant part,

> The provisions of this part, except ss. 501.608 and 501.616(6) and (7), do not apply to:
>
> (8) Any licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license. As used in this section, "licensed insurance broker, agent, customer representative, or solicitor" means any insurance broker, agent, customer representative, or solicitor licensed by an official or agency of this state or of any state of the United States.

As noted, Plaintiff alleges the Corporate Defendants are both "licensed to transact insurance in Florida . . . ." Compl. at ¶¶ 6-7. That is consistent with government records – from the official websites of the Florida Office of Insurance Regulation and Florida Department of Financial Services – of which this Court can take judicial notice. *See* Exs. B & C. *See also*, *e.g.*, *S.-Owners Ins. Co. v. Waterhouse Corp.*, No. 6:21-CV-504-PGB-EJK, 2022 WL 20677887, *11 (M.D. Fla. July 25, 2022), aff'd, No. 22-12703, 2023 WL 4234180 (11th Cir. June 28, 2023); *In re Everglades Island Boat Tours, LLC*, 484 F. Supp. 2d 1259, 1261 (M.D. Fla. 2007). The same is true of the Individual Defendants. *See* Compl. at ¶¶ 8-10 (alleging each is a "Florida licensed agent"); Exs. D-F.

Accordingly, as there is no dispute in the Complaint that the Corporate Defendants and any Individual Defendants for which they are conceivably being sought to be held vicariously liable are licensed to sell insurance, it is irrefutable as a matter of law that they are exempt from any licensing requirement for "commercial telephone solicitors." Count V, which is based upon an alleged

violation of that requirement, necessarily fails as a matter of law and must be dismissed.

### G. Count IV: NDNC Claim

Count IV asserts a claim under 47 U.S.C. § 227(c), which creates a private right of action for any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). As is relevant for Plaintiff's NDNC claim, the regulations prohibit "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government . . . ." 47 C.F.R. § 64.1200(c)(2).

Plaintiff, though, has not alleged that he is "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." *Id.* Plaintiff fails to allege that *he* registered his telephone number on the registry *himself*, instead alleging in the passive voice that his telephone number "was placed" on the registry. Compl. at ¶ 17.

As another court recently explained,

> [t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . . Section 6[4].1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-

> not-call registry. ***The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else***.

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, *2 (N.D. Iowa June 9, 2022) (emphasis added).

In *Rombough*, the court dismissed the complaint because the plaintiff failed to "allege that she registered her telephone number on the do-not-call registry." *Id.* at *3. Here, Plaintiff did not allege facts showing that he registered his telephone number on the do-not-call registry himself and thus he cannot assert a private right of action for an alleged violation of 47 C.F.R. § 64.1200(c)(2), requiring dismissal.

### H. Count V: IDNC Claim

In Count V, Plaintiff claims that Defendants violated 47 U.S.C. § 227(c)(5) and its implementing regulation, 47 C.F.R. § 64.1200(d). This claim, too, is due to be dismissed because Plaintiff does not plausibly allege that Defendants lacked proper IDNC procedures set forth in 47 C.F.R. § 64.1200(d). Further precluding any such plausibility of the alleged IDNC violation is the lack of any well-pleaded allegations of facts that Plaintiff ever asked Defendants to stop calling him, let alone that they called him after such a request.

"For a TCPA claim under 47 C.F.R. § 64.1200(d) to survive a motion to dismiss, 'a plaintiff must show that the entity placing the calls failed to institute the proper procedures *prior* to the initiation of the call.'" *Barr v. Macys.com, LLC*,

No. 1:22-CV-07867 (ALC), 2023 WL 6393480, *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). *See also Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, *5 (S.D. Fla. Jan. 17, 2014) (same). Those procedures include having a written DNC policy, training personnel, and recording and honoring DNC requests within thirty days. *See* 47 C.F.R. 64.1200(d).

Plaintiff's only allegation relating to Defendants' purported failure to comply with the IDNC requirements is plainly conclusory, and merely states that "Defendant(s) violated 47 C.F.R. § 64.1200(d) by failing to (1) maintain written policies; (2) train its telemarketing personnel; and (3) maintain a standalone do-not-call list." Compl. at ¶ 48. Similarly conclusory allegations of non-compliance were rejected in *Barr* as insufficient, and thus failed to state a claim. 2023 WL 6393480 at *5. Put simply, there are no factual allegations in the Complaint that would permit the Court to draw an inference that Defendants lacked proper procedures in any aspect.

Plaintiff does not even allege that he ever asked about or requested a copy of Defendants' DNC policy. This is fatal, because a plaintiff does "not plausibly allege an internal do not call list violation" when he "did not request a copy of the Do Not Call Registry [or policy] from Defendants." *Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 WL 798371, *3 (D. Nev. Mar. 16, 2022) (dismissing plaintiff's § 64.1200(c) claim for failure to state a claim). The court in *Barr* similarly stressed that deficiency and concluded that "[o]ther than his conclusory

allegation that Defendant lacked an Internal DNC, Plaintiff has failed to adequately dispute the existence of Defendant's Internal DNC list and policies, or that Defendant's procedures were lacking in any way." 2023 WL6393480 at *4. As in *Barr*, "[o]ther than his conclusory allegation that Defendant lacked an Internal DNC, Plaintiff has failed to adequately dispute the existence of Defendant's Internal DNC list and policies, or that Defendant's procedures were lacking in any way." *Id.* at *5.

Nor has Plaintiff alleged that he asked anyone placing the calls at issue to add him to a company-specific do-not-call list or otherwise stop calling him. At most, he alleges that he "expressed disinterest on the first call." Compl. at ¶ 20. For the same reasons as discussed above in support of lack of standing, under settled law an expression of disinterest is insufficient to constitute "a request from a residential telephone subscriber not to receive calls from that person or entity . . . ." 47 C.F.R. 64.1200(d)(3). *See* discussion at 4-6, *supra*. Because "[t]his regulation is violated when defendant calls plaintiff *after* plaintiff requests to be placed on its internal do-not-call list," Plaintiff's failure to allege he ever made such a request precludes him from stating a plausible "violation of FCC Regulation 64.1200(d)(3) . . . ." *Shelton v. Merch. Flow Fin. Corp.*, No. CV1811294JMVSCM, 2018 WL 6839562, *8 (D.N.J. Dec. 31, 2018).

### I. Count VI: Intrusion Upon Seclusion Claim

Plaintiff's final count is a cause of action for the state law tort of intrusion upon seclusion and privacy. *See* Compl. at ¶¶ 52-60.[5] Plaintiff alleges that the conditional composite term "Defendant(s)" – conceivably any or all of the five Defendants – "knowingly contacted the Plaintiff on his private and personal cell phone number," and that "Defendant(s)' repeated intrusion upon the solitude or seclusion into the privacy and conduct is highly offensive to any reasonable person and especially to Plaintiff." *Id.* at ¶¶ 57 & 58. Repeated telephone calls, however, standing alone, are insufficient as a matter of law to support such a claim.

The Florida Supreme Court has defined intrusion upon seclusion as "physically or electronically intruding into one's private quarters." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). "One of the elements of intrusion is that the invasion of privacy must be highly offensive to a reasonable person." *Sprogis v. Suntrust Bank*, No. 6:13-cv-365-Orl-37, 2013 WL 2456090, *2 (M.D. Fla. Jun. 6, 2013). Further, the level of offensiveness must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Shadlich v. Makers Nutrition LLC*, No. 8:20-CV-389-T-60CPT, 2020 WL 5255133, at *2 (M.D. Fla. Sept. 3, 2020) (quoting *Sprogis*, 2013 WL 2456090 at *2). Accordingly, this claim requires the same level of outrageous conduct required for a claim of intentional infliction of emotional distress. *See Neeley v.*

[5] The first paragraph of this Count, which follows Paragraph 56, is erroneously numbered as Paragraph 52.

*Wells Fargo Fin., Inc.*, No. 8:12-CV-542-T-33AEP, 2012 WL 5949106, *4 (M.D. Fla. Nov. 28, 2012).

Given these legal principles, Florida courts routinely dismiss claims for intrusion upon seclusion when they are based solely on repeated telephone calls, finding they fall short of the extreme offensiveness required for such a claim.[6] Plaintiff's allegations – that he received at least twenty-eight telephone calls – are therefore insufficient to furnish the basis for a plausible claim under Florida law for intrusion upon seclusion claim. *See* Compl. at ¶¶ 18 & 20. Because Plaintiff has failed to "plead enough facts to plausibly demonstrate that [the Corporate Defendants'] conduct went beyond all possible bounds of decency," the intrusion claim, too, fails as a matter of law. *Sprogis*, 2013 WL 2456090, at *2.

## CONCLUSION

For the foregoing reasons, Defendants Freedom Life Insurance Company of America and USHEALTH Advisors LLC, respectfully request that the Court enter

---

[6] *See Shadlich v. Makers Nutrition LLC*, No. 8:20-CV-389-T-60CPT, 2020 WL 5255133, *3 (M.D. Fla. Sept. 3, 2020) (dismissing claim where plaintiff alleged receipt of more than "98 phone calls over the course of a year" because "allegations of consistent phone calls, without more, are insufficient . . . to state a claim for intrusion upon seclusion"); *Neeley v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 WL 5949106 at *1; 4-5 (M.D. Fla. Nov. 28, 2012) (dismissing claim because allegations of continuous belligerent and belittling debt collection calls made to the plaintiff's cell phone and place of employment were not sufficient to "satisfy Florida's outrageousness standard"); *McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1339, 1341-42 (M.D. Fla 2014) (dismissing claim after finding that an allegation of over 6,000 harassing and threatening phone calls in two months did not satisfy the outrageousness standard for an intentional infliction of emotional distress claim); *Oppenheim v. I.C. System, Inc.*, 695 F. Supp. 2d 1303 (M.D. Fla. 2010) (holding that a collection agency's act of placing more than thirty-five phone calls during a three-month period, sometimes calling from four to six times a day, did not rise to the level of outrageousness necessary to sustain an intrusion claim); *Kent v. Harrison*, 467 So. 2d 1114, 1114-15 (Fla. 2d DCA 1985) (holding allegation of continuous phone calls for several months was not sufficient to establish a claim for intentional infliction of emotional distress because the court could not conclude that the behavior was outrageous or extreme).

an order dismissing Plaintiff's Complaint, and granting other relief the Court deems appropriate.

**CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)**

The undersigned hereby certifies that, in accordance with Local Rule 3.01(g), he met and conferred with Plaintiff *Pro Se* by telephone on June 6, 2024 regarding the grounds and requested relief of this Motion. The parties were unable to resolve the motion.

Dated: June 5, 2024

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman (Bar No. 662501)
Roy Taub (Bar No. 116263)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendants Freedom Life Insurance Company of America and USHEALTH Advisors, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 5, 2024, a true and correct copy of the foregoing was served on all counsel of record via ECF. I further certify that a copy of the foregoing document will be served by e-mail upon Plaintiff *pro se* at John@BurkholderLaw.com.

*/s/ Roy Taub*
ROY TAUB